# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1474V
UNPUBLISHED

| | |
|---|---|
| MICHAEL BERGE,<br><br>                      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                      Respondent. | Chief Special Master Corcoran<br><br>Filed: August 17, 2021<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Jessica Olins, Maglio Christopher & Toale, PA, Washington, DC,* for Petitioner.

*Christine Mary Becer, U.S. Department of Justice, Washington, DC,* for Respondent.

## DECISION AWARDING DAMAGES[1]

On September 25, 2019, Michael Berge filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") causally related to the influenza ("flu") vaccine he received on November 13, 2018. Petition at 1, ¶¶ 1, 14. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$116,343.57, reflecting $115,000.00 for his past pain and suffering plus $1,343.57 for his past unreimbursed medical expenses.**

## I.  Relevant Procedural History

Shortly after filing the Petition in September 2019, Mr. Berge filed an affidavit and some of the medical records required under the Vaccine Act. Exhibits 1-18, ECF Nos. 6-7; *see* Section 11(c). Over the subsequent nine-month period, Petitioner filed the remainder of the required medical records. Exhibits 19-35. ECF Nos. 11, 13, 19, 22, 29, 31.

On March 30, 2021, Respondent filed his Rule 4(c) Report, conceding Petitioner was entitled to compensation for his SIRVA, and I issued a Ruling on Entitlement a few days later. ECF Nos. 38-39. Approximately one month thereafter, Petitioner filed a joint status report indicating the parties had reached an impasse in their efforts to agree upon the appropriate amount of damages. ECF No. 41.

The parties filed simultaneous briefs on June 28, 2021. Memorandum of Law in Support of Petitioner's Motion for Findings of Fact and Conclusions of Law Regarding Damages ("Brief"), ECF No. 44; Respondent's Brief on Damages ("Opp."), ECF No. 45. Petitioner filed a responsive brief three weeks thereafter. Petitioner's Reply to Opp. ("Reply"), ECF No. 46. The issue is now ripe for adjudication.

## II.  Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a

2

mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Human Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

### III.     Prior SIRVA Compensation Within SPU[4]

#### A.     Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2021, 2,097 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,036 of these cases, with the remaining 61 cases dismissed.

Of the compensated cases, 1,187 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 69 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[5]

1,093 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 25 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

The remaining 849 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] *See, e.g., Sakovits v. Sec'y of Health & Human Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[6] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *69* | *1,093* | *25* | *849* |
| **Lowest** | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $75,000.00 | $70,000.00 | $90,000.00 | $45,000.00 |
| **Median** | **$97,500.00** | **$90,100.00** | **$115,772.83** | **$65,000.00** |
| **3rd Quartile** | $125,360.00 | $119,381.38 | $160,502.39 | $90,000.00 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 69 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $95,500.00 as the median amount. Only five of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,000.00.[7]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment of 40 days to over six months. In cases with more significant initial pain, petitioners experienced this greater pain for three months or less. All petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of PT. None required surgery. The duration of the injury ranged from six to 29 months, with petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

---

[6] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[7] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 95 PT sessions over a duration of more than two years and multiple cortisone injections, was required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering. In the fourth case involving an award of future pain and suffering, the petitioner provided evidence of an ongoing SIRVA expected to resolve within the subsequent year.

### IV. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

#### A. The Parties' Arguments

The parties agree Petitioner should be awarded $1,343.57 for his unreimbursed medical expenses. Brief at 2; Opp. at 1. Thus, the only area of disagreement is regarding the amount of compensation which should be awarded for Petitioner's pain and suffering.

Petitioner requests $140,000.00 for this damages component. Brief at 12. Alleging a one-year period of conservative treatment[8] and need for a surgical intervention thereafter, Petitioner emphasizes the constant and severe levels of pain he reported during this time. *Id.* at 6-7. He maintains that he attempted physical therapy ("PT") but could not complete it. *Id.* at 7 (citing the only PT record filed, from an initial evaluation on February 5, 2019). He also claims pain and disruption which continued post-surgery,

---

[8] The correct time frame is slightly less than ten months. Petitioner was administered the flu vaccine on November 13, 2018. Exhibit 1. He underwent surgery on September 5, 2019. Exhibit 31 at 4-5.

6

interfering with his ability to perform his job, to engage in past hobbies, to perform routine household chores, and to care for his disabled brother. *Id.* at 8.

While referencing the greater amounts (ranging from $110,000.00 to $160,000.00) awarded in SPU cases involving SIRVAs of longer durations which often have required surgery, Petitioner discusses in detail five of these cases[9] which he believes are closer to the circumstances in his case. Brief at 9-11. In particular, Petitioner asserted that the severity and duration of his symptoms were most similar to those suffered by the *Rafferty, Dobbins,* and *Wilson. Id.* at 11-12.

In reaction, Respondent maintained Petitioner should be awarded only $80,000.00 for his past pain and suffering. Opp. at 1. While acknowledging the impact of the pain Petitioner suffered during the initial year following vaccination, Respondent argues that Petitioner has failed to provide evidence establishing that his SIRVA symptoms continued after his last visit to his orthopedic surgeon, on September 11, 2019. *Id.* at 13. He stresses the improvement Petitioner reported at that time, and the lack of significant treatment prior to Petitioner's arthroscopic surgery, performed on September 5, 2019. *Id.* at 13.

In his brief, Respondent devotes a significant amount of his argument to a discussion of the Vaccine Act's $250,000.00 cap on awards for pain and suffering. Opp. at 5-13. Respondent also criticizes comparisons between reasoned damages decisions (which, at present, have been issued in more than 71 SPU SIRVA cases) and the "meeting-in-the-middle" method that he believes is sometimes being utilized to split the difference between each side's pain and suffering figure. *Id.* at 13 n.6. Respondent asserts instead that the large number of proffered cases in SPU is a more accurate representation of the appropriate of damages to be awarded. *Id.*

Petitioner's reply reiterates his previously stated arguments regarding the severity and effects of his SIRVA. Reply at 2-3. He also criticizes Respondent's extensive discussion of the Vaccine Act's $250,000.00 cap (*id.* at 1-2) and failure to "refer to any Court awarded decisions as a basis for [his proposed] figure on pain and suffering." (*id.* at 2).

---

[9] The amounts awarded for actual pain and suffering in these cases range from $120,000.00 to $130,000.00: *Stoliker v. Sec'y Health & Human Servs.*, No. 17-0990V, 2020 WL 5512534 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $120,000.00 for actual pain and suffering); *Meyers v. Sec'y of Health & Human Servs.*, No. 18-0909V, 2020 WL 3755335 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $122,500.00 for actual pain and suffering); *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for actual pain and suffering); *Rafferty v. Sec'y of Health & Human Servs.*, No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020) (awarding $127,500.00 for actual pain and suffering); *Wilson v. Sec'y Health & Human Servs.,* No. 19-0035V, 2021 WL 1530731 (Fed. Cl. Spec. Mstr. Mar. 18, 2021) (awarding $130,000.00 for actual pain and suffering).

**B.     Analysis**

The guidance provided by the *Graves* decision is clear,[10] and I have previously addressed the more general arguments about calculation of pain and suffering damages made by Respondent during expedited motions days and in other damages decisions. While noting that this end result may occur in some cases (and disappoint both sides as a result), I have in fact *rejected* the "meeting-in-the-middle" method Respondent claims is being used, based on the proposition that "each petitioner deserves an examination of the specific facts and circumstances in her or his case." *Sakovits*, 2020 WL 3729420, at *3. But I also have rejected Respondent's argument that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. *Id.* at *4. While "settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases," they are not as persuasive as reasoned decisions from a judicial neutral. *Id.* (emphasis in original). Taken as a whole, the data from these decisions can be a helpful gauge of the compensation being awarded in SPU SIRVA cases.

A thorough review of the medical records reveals that, except for a period of three to four weeks in July 2019 - when he experienced temporary pain relief from a cortisone injection (*see* Exhibit 5 at 17), Petitioner reported severe pain, often at a level of ten out of ten, from the first time he sought treatment for his SIRVA injury - thirteen days post-vaccination on November 26, 2018, until he underwent arthroscopic surgery on September 5, 2019. *E.g.,* Exhibit 3 at 12, 8; Exhibit 6 at 15; Exhibit 3 at 8; Exhibit 5 at 7 (listed chronologically); *see* Exhibit 31 at 4-5. In fact, Petitioner's level of pain was so great that it prevented him from undergoing a complete PT evaluation on February 15, 2019. The record from this evaluation indicated that some testing was "[i]nconclusive due to the fact that the slightest movement [wa]s reported [to be] painful." Exhibit 5 at 8.

There are, however, entries that counter Petitioner's claims of persistently severe levels of pain prior to surgery. For example, during the attempted PT evaluation in February 2019, the physical therapist noted that Petitioner informed her he was attending PT at his lawyer's behest. Exhibit 5 at 7. In the record from that visit, the therapist opined that Petitioner's "subjective complaints . . . appear to outway [sic] his objective findings." *Id.* at 9. Additionally, Petitioner declined cortisone injections offered to him on two separate occasions (January 8 and February 11, 2019). Exhibit 12 at 59; Exhibit 7 at 10. In briefing, Petitioner offered no rationale for his decision. Although not indicative of a complete lack of pain and suffering, Petitioner's decision to decline the offered treatment does support the proposition that his pain may not have been as constant and severe as

---

[10] *See supra* Section II (for further discussion).

he claims.

Regarding the duration of Petitioner's symptoms, the record clearly indicates he experienced significant improvement after undergoing arthroscopic surgery - approximately ten months post-vaccination on September 5, 2019. *See* Exhibit 25 at 3; Exhibit 31 at 4-5 (surgical records). At his post-surgical visit on September 11, 2019, Petitioner reported that his "shoulder pain [wa]s significant[ly] better." Exhibit 25 at 3. Observed as having "pretty good motion" and no significant stiffness, he was provided a home exercise program and informed that "he does not need a sling." *Id.* There is no indication that Petitioner required further treatment thereafter.

It also is important to note that Petitioner suffered from chronic and significant back, neck, and knee pain since at least 2013, and was being treated at a pain management clinic with a multitude of medication and treatments, including opioids, from at least September 2016. *E.g.* Exhibit 3 at 17, 26; Exhibit 9 at 2; Exhibit 29 at 8. According to his earlier medical records, these other conditions sometimes prevented Petitioner from working and performing certain tasks. *E.g.,* Exhibit 24 at 2, 34. Two weeks before his vaccination - at an October 29, 2018 visit to his pain management clinic, Petitioner reported severe back pain, describing the level of his pain as between eight to ten out of ten. Exhibit 3 at 17. Petitioner's prescription for Percocet was continued. *Id.*

Petitioner fails to mention these other sources of pain in his petition, affidavit, or briefs. *See generally,* Petition; Exhibit 2; Brief; Reply. This omission is most profound when considering Petitioner's argument that he continues to suffer the effects of his SIRVA injury. He describes tasks which, at a minimum, would have been difficult to perform, given the prior condition of his back, neck, and knees, and attributes his inability to perform these tasks exclusively to the shoulder injury he suffered. Additionally, he also does not address the significant improvement he reported on September 11, 2019, six days post-surgery (Exhibit 25 at 3) or the lack of documentation showing any treatment of any symptoms of his SIRVA after that date. Petitioner has not substantiated the alleged continued effects of his SIRVA.

I find that there is sufficient evidence to establish that the symptoms of Petitioner's SIRVA, from vaccination until the date of his surgery, were severe enough to warrant a larger award for pain and suffering than what Respondent proposes. Although Petitioner may have exaggerated some of his reports of pain and initially declined two cortisone injections, he later agreed to an injection and underwent arthroscopic surgery to alleviate his pain. Thus, the appropriate award in this case should reflect the factors of severity and duration which Petitioner emphasizes.

Nevertheless, while the cases cited by Petitioner are useful references for the pain and suffering award in this case, I find that the award *in this case* should be slightly less than what was awarded in those cases. Petitioner's claims of ongoing symptoms and difficulties attributed solely to his SIRVA are not substantiated in this case. Petitioner had unrelated sources of pain prior to vaccination which limited his ability to work and perform specific tasks. Additionally, he experienced significant improvement following arthroscopic surgery, performed ten months post-vaccination, and required no PT or other thereafter.

V.     Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $115,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[11] I also find that Petitioner is entitled to $1,343.57 in actual unreimbursable expenses.**

**I thus award Petitioner a lump sum payment of $116,343.57, representing $115,000.00 for his actual pain and suffering and $1,343.57 for his actual unreimburseable expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[12]

**IT IS SO ORDERED.**

                                            **s/Brian H. Corcoran**
                                            Brian H. Corcoran
                                            Chief Special Master

---

[11] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.